IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CELESTE FRIERSON, *et al.*,
    *Plaintiffs*,

v.

HISCOX INC., *et al.*,
    *Defendants*

Case No. 24-cv-1200-ABA

**MEMORANDUM OPINION**

Plaintiffs, including Celeste Frierson as the personal representative of the estate of Dorothy Conyers and on her own behalf, have sued for a declaratory judgment that Defendants Hiscox, Inc. and Hiscox Insurance Company, Inc. (together "Hiscox") have a duty to defend Defendant Falcon Transport, LLC in a negligence action brought by Plaintiffs that is currently pending in state court. Hiscox has filed a motion to dismiss. For the reasons stated below, the Court will grant the motion to dismiss.

**BACKGROUND[1]**

A driver for Falcon Transport, which provides non-emergency medical transport, was driving Dorothy Conyers to a dialysis center on April 15, 2020. ECF No. 3 at 9 ¶ 21, 13 ¶ 39. Ms. Conyers, who was wheelchair-bound, "needed to be properly buckled into the wheelchair, and her wheelchair needed to be properly attached and fastened to the van, before transport." *Id*. at 13 ¶ 39. During the trip, the van driver allegedly "became distracted and braked hard to avoid a collision." *Id*. "This maneuver caused Ms.

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Conyers' wheelchair, which allegedly had not been properly attached and fastened by the driver to the transport van . . . to come loose and roll forward," causing Ms. Conyers significant injury. *Id.* "The injuries suffered by Ms. Conyers during the occurrence caused her to experience a steep decline" and she "passed away six days later, on April 21, 2020." *Id.*

On April 4, 2023, Plaintiffs sued Falcon Transport in the Circuit Court for Prince George's County, Maryland, alleging that Falcon Transport was negligent, and that its negligence resulted in Ms. Conyers's death. *Id.* at 8 ¶ 20. At the time of the accident, Falcon Transport had two insurance policies (or at least two that are relevant here): (1) a commercial auto policy with Gateway Insurance Company, and (2) a policy with Hiscox that provided professional liability and commercial general liability coverage. *Id.* at 9 ¶¶ 22-23. Shortly after Ms. Conyers's death, the Circuit Court of Cook County, Illinois declared Gateway Insurance insolvent and canceled its policies. *Id.* at 9 ¶ 24. "To fill the void created by an insurer's insolvency, the Maryland General Assembly created a statutory scheme involving the establishment of" the Maryland Property & Casualty Insurance Guaranty Corporation ("PCIGC"). *Id.* at 9-10 ¶ 25 (citing Md. Code Ann., Ins. §§ 9-301, *et seq.*). Plaintiffs allege that "[s]tanding in the shoes of the insolvent insurer, PCIGC is liable for 'covered claims' within the meaning of the statute." *Id.* But, "PCIGC's liability is statutorily limited . . . to $300,000." *Id.* (citing Md. Code Ann., Ins. §§ 9-306(a)(2)). Likewise, PCIGC's liability is limited in that "a person having a covered claim against PCIGC must first exhaust the person's rights under any other available insurance policy." *Id.* (citing Md. Code Ann., Ins. §§ 9-310(a)(1)).

With Gateway Insurance insolvent, Plaintiffs filed this action in state court seeking a declaration that Hiscox is obligated to provide a defense to Falcon Transport

2

in the underlying negligence case, which Hiscox has refused to do. *Id.* at 10 ¶ 28 - 11 ¶ 29. Plaintiffs also included as defendants Falcon Transport, PCIGC, Geico Casualty Company, and Maryland Automobile Insurance Fund. *Id.* at 1-3. Hiscox removed the case to this Court on April 24, 2024. ECF No. 1. On May 17, 2024, Falcon Transport filed a crossclaim against Hiscox for declaratory relief, incorporating the factual allegations in Plaintiffs' complaint. ECF No. 13. Hiscox filed the present motion to dismiss asserting that its policy with Falcon Transport explicitly excluded damages arising out of the use of a vehicle and, thus, it is not obligated to defend Falcon Transport. ECF No. 16 at 9-12, *see also* ECF No. 3 at 42 and 64 (the policy's auto exclusions).[2] Plaintiffs and Defendants Falcon Transport and PCIGC (together "the Responding Parties") filed a joint response to the motion to dismiss in which they argue that because the Hiscox policy covers only Falcon Transport's "performance of non-emergency services as an ambulance," ECF No. 3 at 20, the auto exclusion essentially renders the policy illusory, in which case the exclusion should be ignored and Hiscox should be required to provide a defense. ECF No. 21 at 6-11. Defendant Maryland Automobile Insurance Fund also filed a response adopting the arguments in the Responding Parties' brief. ECF No. 22. Hiscox filed a reply and PCIGC filed a motion for leave to file a surreply, which the Court will grant. ECF Nos. 26, 27, 31.

## STANDARD

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which

---

[2] All page citations to filings correspond to the ECF pagination, which may not be identical to the pagination used by the parties.

3

relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

## DISCUSSION

As stated, Falcon Transport provides non-emergency medical transport. ECF No. 3 at 9 ¶ 21. The policy Hiscox issued to Falcon Transport provided professional liability and commercial general liability coverage, *id.* at 9 ¶ 23, and covered claims arising "[s]olely [from] the performance of non-emergency services as an ambulance." *Id.* at 20. The policy, however, also included an exclusion providing that Hiscox "will have no obligation to pay any . . . damages . . . for any claim for . . . bodily injury . . . arising out of the . . . use . . . of any . . . auto . . . owned or operated by . . . you. Use includes operation and loading and unloading." *Id.* at 42; *see also id.* at 64. The policy defines "auto" as "a land motor vehicle, trailer, or semi-trailer designed for travel on public roads" or "any other land vehicle subject to a financial responsibility law or other motor vehicle insurance law." *Id.* at 49 & 64. The Hiscox policy was structured specifically to exist alongside, and not to create duplicate coverage with, a separate auto insurance policy. Indeed, the Hiscox Policy *required* Falcon Transport to "maintain at all times on a

4

continuous basis during the policy period" "CSL Commercial Auto Insurance" and warned that "[f]ailure to maintain such insurance coverage will result in the voiding of all coverage under this policy." *Id.* at 63. As also stated, the required auto policy was provided by Gateway Insurance, which is now insolvent.

When Falcon tendered Plaintiffs' claim to Hiscox and sought defense and indemnification coverage, Hiscox did not respond. *Id.* at 10 ¶ 26.

The Responding Parties contend that Hiscox's denial of coverage was wrongful for two reasons. First, they contend that the auto exclusion did not apply because, as PCIGC puts it, the injury to Ms. Conyers occurred because of "the failure to properly buckle Ms. Conyers into her chair and attach the chair safely to the van, and was unrelated to the use of any vehicle." ECF No. 31 at 2. Second, the Responding Parties argue that even if the auto exclusion applied, that exclusion is unenforceable as applied to Plaintiffs' claim because construing the exclusion broadly enough to apply to the accident here would render the policy "completely contradictory" and the grant of coverage "illusory." ECF No. 21 at 8. The Court addresses these two issues in turn.

**A.     The Auto Exclusion Applies**

As stated above, the Hiscox policy expressly excludes coverage for bodily injury damages "arising out of the use of any auto owned or operated by [Falcon]" including "loading and unloading." ECF No. 3 at 42 & 64 (ellipses omitted). And it defines "auto" to include any "land motor vehicle, trailer, or semi-trailer designed for travel on public roads" or "any other land vehicle subject to a financial responsibility law or other motor vehicle insurance law." *Id.* at 49 & 64.

Hiscox argues that it denied the claim based on the auto exclusion because Plaintiffs allege that Ms. Conyers was injured while "being transported in a Falcon

5

Transport van" after the driver "became distracted and braked hard to avoid a collision," which "caused Ms. Conyers' wheelchair, which allegedly had not been properly attached and fastened by the driver to the transport van . . . to come loose and roll forward." *Id.* at 13 ¶ 39. The Responding Parties (specifically, PCIGC) argue that the auto exclusion does not apply because Plaintiffs' claim is that Ms. Conyers was injured because of "the failure to properly buckle Ms. Conyers into her chair and attach the chair safely to the van, and was unrelated to the use of any vehicle." ECF No. 31 at 2.

      The Court agrees with Hiscox that the injury is alleged to have arisen out of the use of an "auto" and squarely falls within the scope of the auto exclusion. The parties do not dispute that Maryland law applies to this case. ECF No. 16-1 at 8; ECF No. 21 at 7. There is also no dispute that the van that Ms. Conyers was being transported in was a "land motor vehicle . . . designed for travel on public roads." ECF No. 3 at 49 & 64. Thus, the question becomes whether Plaintiffs' claim "aris[es] out of the use of any auto owned or operated by [Falcon]" including "loading and unloading." *See id.* at 42 & 64. "Maryland courts have interpreted broadly the policy phrase 'arising out of'" and equated it with "'but for' causation." *Beretta U.S.A. Corp. v. Fed. Ins. Co.*, 17 F. App'x 250, 253 (4th Cir. 2001); *id.* at 254 n.3; *Insights Trading Grp., LLC v. Fed. Ins. Co.*, No. 10-cv-340-RDB, 2010 WL 2696750, at *5 (D. Md. July 6, 2010) ("[T]he phrase 'arising out of' is broadly construed and exclusion clauses bearing the phrase are generally deemed to be triggered upon a showing of 'but for' causation."). Here, but for the driver braking hard while driving a vehicle with Ms. Conyers as a passenger, Ms. Conyers would not have been injured. Moreover, the exclusion explicitly applies to loading passengers, ECF No. 3 at 42 & 64, which would include loading the wheelchair. Thus,

the injury arose from the use of an auto and the auto exclusion applies unless it is void or otherwise unenforceable.

**B.     The Auto Exclusion Is Enforceable**

The Responding Parties argue that even if the auto exception applies, it should be held to be unenforceable in the context of Plaintiffs' claim. The Hiscox policy defines "Covered Professional Services" as "the performance of non-emergency services as an ambulance." *Id.* at 20 (Declaration page of Hiscox policy). The Responding Parties allege that Falcon's entire business constitutes the performance of those "non-emergency services as an ambulance." ECF No. 21 at 8. They contend that if the auto exclusion were construed to exclude Plaintiffs' claim, that would mean the auto exclusion serves to exclude coverage of all claims arising out of the use of one of Falcon's vehicles, which would render the coverage provided by the policy illusory. *Id.* (arguing that "[i]f the exclusion totally swallows the insuring provision, the provisions are completely contradictory . . . [t]hat is the grossest form of ambiguity, and [the insurer] unquestionably, would be obliged to defend and indemnify") (quoting *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 525 (1997)).

Where a policy contains an exclusion that completely eliminates *any* coverage, under Maryland law the policy is deemed "illusory," and the exclusion is deemed unenforceable. *Bailer*, 344 Md. at 525. But an insurance policy that limits coverage but does not entirely negate coverage is not necessarily illusory. *See Bayside Fire Prot., LLC v. Everest Indem. Ins. Co.*, 592 F. Supp. 3d 454, 471 (D. Md. 2022) ("An insurance contract may limit its benefits without becoming illusory."); *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705, 740-41 (2018) (providing that

7

when a policy exclusion does not negate all coverage, "the exclusion does not render coverage illusory and [courts] are not permitted to disregard it").

Hiscox contends that the parties intended its policy to have the auto exclusion (which is why the policy required separate commercial auto insurance) and that its enforcement does not negate all coverage under the policy. For example, Hiscox asserts that if a client suffered injury because Falcon Transport failed to pick the client up, the professional liability coverage would apply and not be affected by the auto exclusion. ECF No. 26 at 2. The policy also affords coverage for sexual misconduct or abuse that would not be barred because the abuse would not have been caused by an auto. *Id.* at 2-3. Similarly, Hiscox contends that the general liability coverage would, among other things, still protect Falcon Transport if a customer slipped and fell on Falcon's business premises and would protect against a lawsuit alleging Falcon Transport used another company's trademark. *Id.* at 3. The Court agrees that the provisions describing what the Hiscox policy covers are not entirely negated by the auto exclusion.

As stated by the Responding Parties, "[t]he cardinal rule of contract interpretation is to give effect to the parties' intentions." ECF No. 21 at 7-8 (quoting *Norris v. PNC Bank, N.A.*, Civil Action No. 20-cv-3315-ELH, 2022 WL 2193303 at *22 (D. Md. Jun. 16, 2022)); *see also id.* at 8 ("To determine whether a contract is ambiguous, a court considers the character of the contract, its purpose, and the facts and circumstances of the parties at the time that they enter into the contract.") (quoting *Norris*, 2022 WL 2193303, at *24). Here, Hiscox's policy expressly required a separate auto insurance policy, and excluded coverage for losses that would have been covered by such a policy. ECF No. 3 at 42, 63, & 64. The express language of the Hiscox policy reveals that the parties did not expect Hiscox's policy to cover auto-related injuries at

8

the time the policy was issued. The language also shows that the purpose of the policy was to provide coverage for professional liability and commercial general liability that did *not* arise out of the use of a vehicle. That is also not surprising from a business perspective: insureds are generally not interested in paying premiums for multiple policies providing duplicate coverage. What the parties did not anticipate was the insolvency of the auto insurance carrier, which has caused Plaintiffs to attempt to obtain more coverage from Hiscox than the parties bargained for.

## CONCLUSION

Because excluding injuries caused by automobiles appears to have been the intention of the parties and relevant coverage still exists after enforcing the auto exclusion, Hiscox's motion to dismiss will be granted. The auto exclusion is enforceable and applicable, and thus Hiscox has no duty to defend Falcon Transport in the underlying negligence action premised on an injury arising out of the use of an auto.

Date:  March 27, 2025                                  _____/s/_____
                                                       Adam B. Abelson
                                                       United States District Judge